UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

JUN 1 5 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-304-GWU

LAWRENCE WOODS,                                                    PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

### INTRODUCTION

The plaintiff originally brought Wood v. Apfel, London Civ. Action No. 00-208

(E.D. Ky) to obtain judicial review of an administrative denial of his application for

Disability Insurance Benefits (DIB).  Upon the defendant's motion, the case was

remanded in October, 2000 for further consideration (Tr. 179-180).  After the

issance of another negative agency decision, the appeal was redocketed under the

present civil action number and is currently before the Court on cross-motions for

summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

1

Woods

2.      Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the

2

Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

3

Woods

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

4

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record

6

reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Woods suffered from a substance addiction disorder in early partial remission,[1] a personality disorder, and a depressive disorder. (Tr. 169). The resultant non-exertional restrictions did not prevent the identification of jobs at all exertional levels by a vocational expert (Tr. 169), according to the ALJ.

One of the plaintiff's arguments is that the ALJ failed to consider his "advanced age." Aside from the fact that the plaintiff was only "closely approaching advanced age" until November, 1999, almost 2 ½ years after the alleged onset date as per 20 C.F.R. §404.1563 (Tr. 47), because of the plaintiff's educational status,[2]

_____

[1]Alcohol is no longer a proper source of disability for benefit purposes. Publ. L 104-121, 110 Stat. 847 Section 105 (1996); 20 CFR Section 404.1535.

[2]Of the medium level rules, only Rules 203.01, 203.02 and 203.10 requiring both advanced or more age and a "marginal" or "limited" education would direct a finding of "disabled." Given the fact that the plaintiff graduated from high school, had additional,

7

this factor would have no significance unless Woods had been limited to performing less than medium level work physically. See Medical-Vocational Guideline Rules 203.01-203.31.

The record does not document physical impairments, much less something which would physically restrict the plaintiff to light level work. No physician or other examiner imposed physical limitations on the patient. Robert Fitz commented that Woods appeared to have a lean, athletic build (Tr. 80) and noted that the plaintiff told him his physical status was in "top condition" and he was able to walk 30 to 40 miles a week (Tr. 81) as well as do all his housework (Tr. 84). The plaintiff told James Petit that he had never had any serious illnesses or injuries as of 1998 (Tr. 120), as he also told Dr. G. Duckworth (Tr. 140). Woods reportedly told Dr. Duckworth that his energy was good and that he had already ridden his bicycle 16 miles on the date of the examination. (Tr. 141). Rizwan Ali specifically opined there were no physical limitations (Tr. 127-128, 137-138), as did Martin Siegel (Tr. 198-199). Thus, no physical impairments were established, so as to suggest that Rules 203.01, 203.02 or 203.10 or any of the light level rules might even remotely apply.[3]

---

subsequent vocational training, and exhibited high school level reading scores (e.g., Tr. 83, 85), it is clear that a "limited" or "marginal" education was not present.

[3]For the same reasons, the plaintiff's argument regarding the assessment of pain must fail.

8

Woods

The ALJ's hypothetical mental factors were based on those of Jack Eardley,

an examiner source. (Compare Tr. 205-206 with Tr. 224-225). The hypothetical

factors suggested greater restriction than the one "fair," for attention/concentration,

noted by Examiner Rizwan Ali (Tr. 129, 134, 139, 224). Non-Examining Medical

Expert Suzanne O'Koon provided apt reasons to discount the opinions of Treating

Sources Duckworth and Siegel (Tr. 220-223).[4]

The decision will be affirmed.

This the   /5   day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[4]The plaintiff testified that he was being treated as of the date of the 2002
administrative hearing by Dr. Siegel. All but one of Siegel's handwritten progress notes
from September, 2000 through December, 2001 describe the plaintiff as "pretty good" or
"good" or "doing well" (Tr. 207-208), which was contrary to Siegel's assessment
according to the medical expert (Tr. 222). The opinion of Dr. Duckworth, who apparently
saw the plaintiff for a very limited period of time in late 1998 (Tr. 53, 74, 140, 185, 220-
221) as to barely qualify as a treating source, was also discounted (Tr. 221).

9